Jean-Paul Ciardullo, CA BAR NO. 284170
jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, CA 90071
Telephone: 213-972-4500
Facsimile: 213-486-0065

*Attorneys for Defendant*
*Koninklijke Philips N.V.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITBIT, INC.,<br><br>            *Plaintiff*,<br><br>    v.<br><br>KONINKLIJKE PHILIPS N.V.,<br><br>            *Defendant*. | Case No. 20-cv-02246-RS<br><br>**KONINKLIJKE PHILIPS N.V.'s REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND TRANSFER, OR IN THE ALTERNATIVE TO STAY**<br><br>Date:     July 23, 2020<br>Time:    1:30 PM<br>Location: Courtroom 3 – 17th Floor<br>             450 Golden Gate Avenue<br><br><u>Honorable Richard Seeborg</u> |

# TABLE OF CONTENTS

I. DISMISSAL FOR LACK OF PERSONAL JURISDICTION IS WARRANTED ........................ 1

    A. Fitbit's Arguments For Specific Personal Jurisdiction Fail ................................ 1

    B. Rule 4(k)(2) Is Negated ........................................................................................ 2

        1. Consent To Personal Jurisdiction In Another Proper Forum Negates Rule 4(k)(2) ........................................................................................ 2

        2. "State's Courts Of General Jurisdiction" Includes Federal Court ........................ 4

        3. Rule 4(k)(2)(B) Is Not Satisfied: Fair Play And Substantial Justice Are Lacking Such That The Court May Decline To Exercise Jurisdiction .................. 9

II. IN THE ALTERNATIVE, TRANSFER UNDER § 1404(a) IS WARRANTED ........................ 11

    A. Fitbit Ignores That This Is A Declaratory Judgment Action ............................ 11

    B. Fitbit Incorrectly Downplays The Strong Ties To Massachusetts .................................... 12

    C. Because Of The Unique Facts Of This Case, The Interests Of Justice Weigh Strongly In Favor Of Transfer ........................................................................ 13

III. IN THE ALTERNATIVE, A STAY PENDING THE ITC CASE IS WARRANTED ............... 13

    A. Fitbit's Vague Professed Harm Is No Different Than The Kind Deemed Insufficient To Preclude A Stay In The Precedent Cited By The Motion ........................ 13

    B. The Circumstances Of This Case Make Proceeding Particularly Unfair ........................ 14

    C. A Stay Is Clearly The Appropriate Outcome Absent Dismissal ........................................ 15

IV. CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABB Inc. v. Cooper Indus., LLC*,
  635 F.3d 1345 (Fed. Cir. 2011) ................................................................................................5

*Aliphcom v. Fitbit, Inc.*,
  154 F. Supp. 3d 933 (N.D. Cal. 2015) .....................................................................................14

*Alpha Tech. U.S.A. Corp. v. N. Dairy Equip., Ltd.*,
  No. 6:17-cv-1000-Orl-31DCI, 2018 U.S. Dist. LEXIS 9328 (M.D. Fla. Jan. 22, 2018) ..........8

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
  552 F.3d 1324 (Fed. Cir. 2008) .................................................................................................1

*Early Learning Res., LLC v. Sebel Furniture Ltd.*,
  No. 10-6335(NLH)(JS), 2011 U.S. Dist. LEXIS 112483 (D.N.J. Sep. 30, 2011) ...............3, 6

*Emerging Vision, Inc. v. For Eyes Optical Co.*,
  2009 U.S. Dist. LEXIS 26493, 2009 WL 702243 (S.D.N.Y. Mar. 16, 2009) .........................12

*Falcon Enters. v. Centurion Ltd.*,
  No. C07-0065RSL, 2007 U.S. Dist. LEXIS 80031 (W.D. Wash. Oct. 18, 2007) ...............8, 10

*God, Family & Country LLC v. Marcrest Mfg.*,
  No. 08-3140, 2009 U.S. Dist. LEXIS 14513 (C.D. Ill. Feb. 24, 2009) .....................................3

*Goes Int'l AB v. Wuzla*,
  No. CV 13-7102 PA (Ex), 2014 U.S. Dist. LEXIS 193278 (C.D. Cal. Apr. 7, 2014) .........7, 8

*Google Inc. v. Creative Labs, Inc.*,
  No. 16-cv-02628-JST, 2016 U.S. Dist. LEXIS 163696 (N.D. Cal. Nov. 28, 2016) ..........14, 15

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) ...................................................................................................10

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
  256 F.3d 548 (7th Cir. 2001) .....................................................................................................4

*Kannar v. Alticor, Inc.*,
  No. C-08-5505 MMC, 2009 U.S. Dist. LEXIS 35091 (N.D. Cal. Apr. 9, 2009) ....................11

*Krausz Indus. v. Smith-Blair, Inc.*,
  188 F. Supp. 3d 545 (E.D.N.C. 2016) .......................................................................................8

*Marron v. Whitney Grp.*,
  662 F. Supp. 2d 198 (D. Mass. 2009) .......................................................................................5

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012) .......................................................................................... 2, 3

*Miller Indus. Towing Equip. v. NRC Indus.*,
  No. 1:19-CV-00095 REEVES/LEE, 2020 U.S. Dist. LEXIS 67365, at *14-15 (E.D.
  Tenn. Apr. 16, 2020) ........................................................................................................ 3, 6

*Neurografix et al. v. Philips Electronics North America Corp. et al.*,
  D. Mass Case No. 1:12-cv-11065-RGS ........................................................................... 1, 2

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
  52 F.3d 267 (9th Cir. 1995) .................................................................................................. 5

*Orbital Austl. PTY Ltd. v. Daimler AG*,
  No. 3:14CV808, 2015 U.S. Dist. LEXIS 86631 (E.D. Va. July 1, 2015) ........................ 3, 13

*Synopsys Inc. v. Mentor Graphics Corp.*,
  No. C 12-5025 MMC, 2013 U.S. Dist. LEXIS 48544 (N.D. Cal. Apr. 3, 2013) .................. 11

*Teras Cargo Transp. Am., LLC v. Cal Dive Int'l Austl. PTY Ltd.*,
  No. 15-cv-03566-JSC, 2015 U.S. Dist. LEXIS 141362 (N.D. Cal. Oct. 16, 2015) ............... 7

*Touchcom, Inc. v. Bereskin & Parr*,
  574 F.3d 1403 (Fed. Cir. 2009) ................................................................................... 4, 6, 8

*Universal Music MGB NA, Ltd. Liab. Co. v. Quantum Music Works, Inc.*,
  769 F. App'x 445 (9th Cir. 2019) ......................................................................................... 9

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ........................................................................................................... 10

*Wowwee Grp. Ltd. v. Wallace*,
  No. CV-12-2298-MWF(VBKx), 2012 U.S. Dist. LEXIS 199343 (C.D. Cal. June 27,
  2012) .................................................................................................................................. 12

**Statutes**

28 U.S.C. § 1333(1) ................................................................................................................... 7

28 U.S.C. § 1404(a) ............................................................................................................. 3, 13

Declaratory Judgment Act ....................................................................................................... 10

Lanham Act ................................................................................................................................ 5

PHILIPS REPLY ON MOTION TO DISMISS AND TRANSFER
CASE NO. 20-CV-02246-RS

4813-5247-4305.1

Defendant Koninklijke Philips N.V. ("Royal Philips"), a company of The Netherlands, hereby respectfully replies to Fitbit, Inc.'s ("Fitbit") Opposition (Dkt. 24) to Royal Philips's Motion to Dismiss and Transfer, or Stay in the alternative (Dkt. 18, "Motion").

## I. DISMISSAL FOR LACK OF PERSONAL JURISDICTION IS WARRANTED

### A. Fitbit's Arguments For Specific Personal Jurisdiction Fail

Fitbit does not dispute that general personal jurisdiction is absent over Royal Philips in California, thus necessarily conceding that Royal Philips lacks continuous and systematic contacts with the State. As to specific personal jurisdiction, Fitbit also concedes that, in the context of a declaratory judgment action concerning intellectual property rights, specific jurisdiction may only arise from the defendant's contacts with the State that pertain to enforcement of the asserted intellectual property. (Motion, p. 8-9; Opp., p. 10.) Fitbit further acknowledges that Royal Philips never sent a cease and desist letter, and Fitbit does not dispute the law cited in the Motion that even if a cease and desist letter had been sent, it would not have conferred personal jurisdiction. (*Id.*)

The only form of "minimum contacts" that Fitbit attempts to point to are telephonic and email discussions between the parties occurring in connection with the ITC Action itself including required settlement conferences. (Opp., p. 9-11, Rosenberg Dec. ¶ 4.) Notably, Fitbit cites no law for the proposition that such communications would support specific personal jurisdiction. That is because the law is to the contrary. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1333-34 (Fed. Cir. 2008) ("[T]he crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there.") (citations omitted).

Finally, Fitbit cites out of context a quote from a 2012 brief in *Neurografix et al. v. Philips Electronics North America Corp. et al.*, D. Mass Case No. 1:12-cv-11065-RGS, in which the attorney who drafted the Philips defendants' motion to transfer to California stated that "[d]efendants are subject to personal jurisdiction in the CDCA because all Defendants have engaged in systematic and continuous business in California, and because the accused products are sold in California." (Opp. Ex. E, p. 8.) While perhaps it was arguable that specific personal jurisdiction existed in that case on the basis that the Philips defendants had sold accused infringing MRI machines into California, those unrelated acts and legal

1

claims from eight years ago have no bearing on whether there is specific personal jurisdiction with respect to Fitbit's present declaratory judgment action. The comment about "systematic and continuous business" refers to the sale of relevant products and is just an inarticulate statement by the drafting attorney: the authority cited in the brief for the proposition is Paragraph 5 of the Declaration of a Mr. Ronald Holthuizen, a scientist working for Philips Medical Systems Nederland B.V., who merely attests that the company (not even Royal Philips) had shipped three MRI units into California from 2005-2010. (Supp. Ciardullo Dec., Ex. 2.) Fitbit also omits that the Court in the *Neurografix* case ultimately denied the Philips defendants' transfer motion, finding no relevant connection between Philips and California (see below from the court docket).

| 10/03/2012 | 27 | Judge Richard G. Stearns: ELECTRONIC ORDER entered denying 19 Motion to Transfer Case. Philips has failed to overcome presumption in favor of Neurografix choice of forum. See Nowak v. Tak How Inv., Ltd., 94 F.3d 708, 719 (1st Cir. 1996). Notably, Philips has no connection to the alternative forum (CDCA) which would make it more convenient to litigate there. (Zierk, Marsha) (Entered: 10/03/2012) |
|---|---|---|

      **B.**    **Rule 4(k)(2) Is Negated**

            **1.**    **Consent To Personal Jurisdiction In Another Proper Forum Negates Rule 4(k)(2)**

Fitbit's Opposition makes no attempt to grapple with the arguments and authority cited in the Motion recognizing that consent to personal jurisdiction in another forum can negate Rule 4(k)(2) even if the defendant otherwise has no minimum contacts there. Instead, Fitbit merely parrots the dicta of *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294-95 (Fed. Cir. 2012).

Royal Philips's Motion showed that the *Merial* dicta does not apply in the present case, especially since the issue in *Merial* arose post judgment. (Motion, Section III.C.) As compellingly articulated in the dissent in *Merial* itself, there is no rationale why a defendant's consent to personal jurisdiction in another forum should be treated any differently than personal jurisdiction derived from minimum contacts with that forum. (Motion, p. 14.) Furthermore, because of the unique operation of Rule 4(k)(2), Fitbit could have just as easily invoked personal jurisdiction in Massachusetts as in California (at least in the first instance), making personal jurisdiction equally available in both courts at the time of commencement of the suit (setting aside subsequent designation of an alternative forum by the defendant, as has happened here). (*Id.*, p. 13-14.) Indeed, despite otherwise opposing Royal Philips's request in the alternative to

2

transfer this case pursuant to 28 U.S.C. § 1404(a), Fitbit does not dispute that the threshold requirement of such transfer is met, namely, that Fitbit could have properly had personal jurisdiction (under Rule 4(k)(2)) to sue Royal Philips in Massachusetts.  *See* 28 U.S.C. § 1404(a) ("a district court may transfer any civil action to any other district or division *where it might have been brought*") (emphasis added).

As shown in the Motion, the well-reasoned decisions in *Orbital Austl. PTY Ltd. v. Daimler AG*, No. 3:14CV808, 2015 U.S. Dist. LEXIS 86631, at *8-*10 (E.D. Va. July 1, 2015) and *Miller Indus. Towing Equip. v. NRC Indus.*, No. 1:19-CV-00095 REEVES/LEE, 2020 U.S. Dist. LEXIS 67365, at *14-15 (E.D. Tenn. Apr. 16, 2020) distinguished the *Merial* dicta as limited to the extreme facts of the *Merial* case: a defendant that was already subject to a default judgment trying to get out of it *ex post facto* when it was subjected to a contempt proceeding.  Other authority is in agreement.  *See, e.g., Early Learning Res., LLC v. Sebel Furniture Ltd.*, No. 10-6335(NLH)(JS), 2011 U.S. Dist. LEXIS 112483, at *22-23 (D.N.J. Sep. 30, 2011) (distinguishing the district court ruling in *Merial* as inapplicable, and finding the defendant's consent to personal jurisdiction elsewhere sufficient to negate Rule 4(k)(2)).

Indeed, the dissenting opinion of Federal Circuit Judge Schall in the *Merial* case is itself highly instructive as it distinguishes subject matter jurisdiction (which must exist as of the time of filing an original complaint) from personal jurisdiction (which may be waived after commencement of a suit), explaining that "because the rule that allows a party to defeat Rule 4(k)(2) jurisdiction by designating a substitute forum is founded upon the proposition that personal jurisdiction is waivable, it is not necessary to independently establish that suit could lie in the substitute forum absent the designation."  *Merial*, 681 F.3d at 1311-12.  Judge Schall further explains that the majority's dicta to the contrary was premised on an arbitrarily narrow reading of phrases like "could sue [in another forum]" in the *ISI* and *Touchcom* cases (*id*. at 1312), commenting that "I do not believe that these words, standing alone, are enough to support engrafting this added requirement [that there be an independent basis for jurisdiction other than defendant's consent] onto the Rule 4(k)(2) procedure, especially where that procedure is founded upon the principle that personal jurisdiction is a matter that is waivable."

Yet another example of a court agreeing that simple consent to personal jurisdiction elsewhere suffices to negate Rule 4(k)(2) even in the absence of minimum contacts is *God, Family & Country LLC v. Marcrest Mfg.*, No. 08-3140, 2009 U.S. Dist. LEXIS 14513, at *6-9 (C.D. Ill. Feb. 24, 2009) (a patent

3

case like the present one), in which the court explained (emphasis added):

> Marcrest has not agreed that it truthfully is subject to personal jurisdiction [via minimum contacts] in Michigan, but it argues that this question is irrelevant, because it consents to personal jurisdiction there. **Because personal jurisdiction -- unlike federal subject-matter jurisdiction -- is waivable, this concession suffices to establish personal jurisdiction in Michigan.** *See ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001) … a defendant who wants to avoid use of Rule 4(k)(2) need only name some state in which it agrees that it is subject to personal jurisdiction. [] By waiving personal jurisdiction in Michigan, Marcrest has done so. Rule 4(k)(2) does not apply to vest personal jurisdiction in this Court.

Fitbit does not directly refute any of this, tacitly conceding the correctness of Royal Philips's arguments concerning the ability of consent alone to establish personal jurisdiction in another forum, and thereby and negate Rule 4(k)(2). Instead, Fitbit's Opposition hinges on an incorrect interpretation of the phrase "state's courts of general jurisdiction" in Rule 4(k)(2)(A).

### 2. "State's Courts Of General Jurisdiction" Includes Federal Court

Fitbit argues that Royal Philips cannot negate Rule 4(k)(2) by identifying another *federal* court where personal jurisdiction would be proper, citing the language of the statute that reads "…the defendant is not subject to jurisdiction in any state's courts of general jurisdiction." (Opp., p. 5.) Fitbit has given this clause an untenable interpretation: that Rule 4(k)(2) can never be negated where jurisdiction would exclusively exist only in federal court, since federal courts are of limited jurisdiction rather than general jurisdiction. The problem with this argument is that (1) it is contrary to the manifest purpose of Rule 4(k)(2), and (2) courts have resoundingly rejected it both expressly, and by routinely negating Rule 4(k)(2) based exclusively on a showing of personal jurisdiction in an alternative *federal* court on exclusively *federal* causes of action.

As observed in *Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403, 1414 (Fed. Cir. 2009), and other cases, the Advisory Committee Notes to the 1993 amendment of Rule 4(k)(2) explain that the Rule's purpose was to close a loophole wherein "the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state long arm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction." Thus, it is clear that Rule 4(k)(2) was not intended to

supersede alternative forums where only exclusive federal jurisdiction could be had, but rather was simply concerned with whether State long arm statutes applied that would otherwise satisfy due process concerns. As is relevant here, federal courts derive their right to exercise personal jurisdiction from the long arm statutes of the States in which they sit. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Thus, **Rule 4(k)(2) can be negated by identifying an alternative *federal* court that can properly exercise jurisdiction under the long arm statute of the State in which it sits, even if there could be no jurisdiction in State court due to exclusive federal claims.** Because Royal Philips's consent to suit in the District of Massachusetts comports with the Commonwealth of Massachusetts's long arm statute,[1] Rule 4(k)(2) is negated, and the case should proceed (if at all) in the District of Massachusetts.

A contrary interpretation of Rule 4(k)(2) would be illogical in actual practice. Cases that invoke *exclusive* federal jurisdiction – like patent,[2] copyright, and admiralty – could never under any circumstances be brought anywhere other than in federal court, which, if the statute were (incorrectly) read narrowly, would mean that Rule 4(k)(2) could *never* be negated in a case involving exclusively federal claims.[3] Such an arbitrary and illogical result obviously could not have been intended in the rule making. Beyond which, as shown below, courts do in fact routinely negate Rule 4(k)(2) in such cases.

Suppose then that what Fitbit intended to argue is that, for Rule 4(k)(2) to be negated, the defendant must show that it is subject to *general personal jurisdiction* in the alternative forum State, such that the defendant could otherwise be sued in that State on any cause of action, even if that cause of action is completely unrelated to the case at issue. But this proposition has been resoundingly rejected by the

---

[1] A defendant's consent always renders personal jurisdiction proper without having to consider the State's long arm statute. *Marron v. Whitney Grp.*, 662 F. Supp. 2d 198, 200 (D. Mass. 2009).

[2] A declaratory judgment case like this one seeking a determination of non-infringement of a patent also gives rise to exclusive federal jurisdiction, and could not be brought in State court. *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1349-52 (Fed. Cir. 2011). If this case proceeded, Royal Philips's inevitable counterclaim for patent infringement would also fall under exclusive federal jurisdiction.

[3] Note that many claims "aris[ing] under federal law" as required by Rule 4(k)(2) can readily be brought in State court. For example, there is concurrent jurisdiction in federal and state court for trademark law claims under the Lanham Act, which is a federal statute. Thus, even proceeding on the incorrect premise that Rule 4(k)(2) could not be negated by identifying and alternative federal court, a defendant in a Lanham Act case would still have the option of negating Rule 4(k)(2) by identifying an alternative state court. However, by construing Rule 4(k)(2) such that negation requires identifying an alternative *state* court where the claims at issue could have been brought, defendants in cases involving exclusively federal claims (like patent and admiralty) would be arbitrarily "trapped" by Rule 4(k)(2).

courts, either explicitly, or by routinely negating Rule 4(k)(2) despite it being clear that there was no general personal jurisdiction over the defendant in the alternative forum state.

In *Early Learning*, the court explained that consent to personal jurisdiction in a *federal* court suffices to negate Rule 4(k)(2), and comports with the "state's courts of general jurisdiction" language of the statute:

> In *Touchcom*, the U.S. Court of Appeals for the Federal Circuit concluded that '...in federal cases, the purposes of Rule 4(k)(2) are best achieved when the defendant is afforded the opportunity to avoid the application of the rule when it *designates a suitable forum in which the plaintiff could have brought suit*.' 574 F.3d at 1415 (emphasis added). **The Court in *Touchcom* only required that the defendant name a suitable 'forum' not a specific 'state.'** Based on *Touchcom*, Sebel's consent to jurisdiction in the U.S. District Court for the District of Columbia is consent to a suitable 'forum' that avoids application of Rule 4(k)(2). …Moreover, since the purpose of Rule 4(k)(2) is to fill a gap where a defendant has minimum contacts in the United States, but is not subject to jurisdiction in any one state, consent to jurisdiction in a particular forum or state satisfies the underlying purpose of the rule.

2011 U.S. Dist. LEXIS 112483, at *13-23 (emphasis added).

Courts across the country have repeatedly reaffirmed the principle that Rule 4(k)(2) can be negated simply by identifying an alternative *federal* court where personal jurisdiction is proper, including in cases where it was clear that no general personal jurisdiction otherwise existed in the corresponding State. Fitbit itself acknowledges these cases and cites them with approval, but seems to have not appreciated that they contradict the conclusions that Fitbit wishes to draw.

For example, one of the cases cited by both parties is *Miller Indus. Towing Equip. v. NRC Indus.*, No. 1:19-CV-00095 REEVES/LEE, 2020 U.S. Dist. LEXIS 67365, at *14-15 (E.D. Tenn. Apr. 16, 2020), which concerns patent infringement allegations for which there is exclusive jurisdiction in federal court. The *Miller* court negated Rule 4(k)(2) jurisdiction in Tennessee in view of the defendant's consent to suit in the District of New Jersey, despite the fact that it was clear that no general personal jurisdiction existed in the State of New Jersey. Fitbit points to a disclosure in the underlying briefing that the defendant had made a "single sale" of an accused infringing product in New Jersey (Dkt. 24-4, p. 9) to argue that personal jurisdiction was based on minimum contacts rather than the defendant's mere consent. However, the Court itself appeared sufficiently satisfied by the defendant's consent to jurisdiction alone. 2020 U.S. Dist. LEXIS 67365, at *14-15. But even assuming that personal jurisdiction turned on minimum contacts,

6

1  a "single sale" of an accused infringing product would only have been sufficient to establish *specific*
2  personal jurisdiction in *federal* court.  Thus, by Fitbit's own apparent logic, there was no "state[] court of
3  general jurisdiction" in New Jersey that would have justified negating Rule 4(k)(2), yet that is exactly
4  what the court (properly) did.

5  Another case cited by both parties is *Teras Cargo Transp. Am., LLC v. Cal Dive Int'l Austl. PTY
6  Ltd.*, No. 15-cv-03566-JSC, 2015 U.S. Dist. LEXIS 141362 (N.D. Cal. Oct. 16, 2015).  *Teras* was an
7  admiralty case.  (*See* Supp. Ciardullo Dec., Ex. 3.)  Admiralty cases are under exclusive federal
8  jurisdiction, and cannot heard in State court.  *See* 28 U.S.C. § 1333(1).  Moreover, there was no finding
9  (or even any inquiry) by the *Teras* court that the defendant was otherwise subject to general personal
10 jurisdiction in the alternative forum State (Texas) on any other kind of legal claim.  The defendant merely
11 conceded "minimum contacts" as an expediency (Rosenberg Dec., Ex. B, p. 4), and the Court ruled that
12 Rule 4(k)(2) was negated by that concession – not by any actual facts showing personal jurisdiction,
13 general or otherwise.  *Teras Cargo*, 2015 U.S. Dist. LEXIS 141362, at *27-28 ("Cal Dive Australia has
14 conceded that venue is proper in Texas <u>by virtue of its concession</u> that it is subject to personal jurisdiction
15 in that state.") (emphasis added).

16 With respect to *Goes Int'l AB v. Wuzla*, No. CV 13-7102 PA (Ex), 2014 U.S. Dist. LEXIS 193278
17 (C.D. Cal. Apr. 7, 2014), contrary to Fitbit's arguments, the court had indeed indicated that it was inclined
18 to negate Rule 4(k)(2) but for independently having decided to transfer venue.  *Id*. at *5-6 ("it is highly
19 doubtful that Goes could establish that this Court possesses personal jurisdiction over Wuzla").  Fitbit also
20 argues that the court's comments were driven by a finding a general personal jurisdiction in New York
21 State, but this is inaccurate.  Although Fitbit points to language in the defendant's briefing inarticulately
22 mentioning "continuous systemic contacts" in New York, those contacts only amounted to having an
23 outside counsel in New York (Wuzla was a Chinese company with no other New York contacts), and the
24 defendant's reply brief clarified its positions that "Defendant consented to personal jurisdiction in New
25 York in its Motion to Dismiss the Complaint, and therefore Fed. R. Civ. P. 4(k)(2) is not applicable."
26 (Dkt. 24-5, p. 7, 20 compared to Reply [Supp. Ciardullo Ex. 4], p. 4 n.2 -- if defendant were subject to
27 general jurisdiction in NY, no consent would be needed.)  In fact, the court itself never deemed Wuzla to
28 be subject to general personal jurisdiction in New York (merely having an attorney there would not give

7

PHILIPS REPLY ON MOTION TO DISMISS AND TRANSFER
CASE NO. 20-CV-02246-RS

4813-5247-4305.1

rise to such jurisdiction), and instead deemed it be a matter of personal jurisdiction by virtue of "consent" in the "Eastern District of New York," *i.e.*, *federal* court rather than New York State generally. 2014 U.S. Dist. LEXIS 193278 at *5, *7. *Goes* was a copyright case implicating exclusive federal jurisdiction, so it could not be brought in State court.

Likewise, in *Alpha Tech. U.S.A. Corp. v. N. Dairy Equip., Ltd.*, No. 6:17-cv-1000-Orl-31DCI, 2018 U.S. Dist. LEXIS 9328, at *11-12 (M.D. Fla. Jan. 22, 2018), the court explained:

> The Federal Circuit adopted an approach that permits use of Rule 4(k)(2) 'when the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible.' *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009). NDE has argued that it cannot be sued in Florida and that it is not subject to personal jurisdiction in Wisconsin, but it has identified a state where suit would be possible. In fact, NDE filed what it referred to as a 'stipulation' consenting to a transfer to Michigan. …Accordingly, Rule 4(k)(2) is inapplicable here.

The claims at issue in *Alpha Tech.* were for patent infringement, and hence fell under exclusive jurisdiction in federal court. While the *Alpha Tech.* court seemed to deem the defendant's consent alone sufficient to negate Rule 4(k)(2), the defendant's "stipulation" referenced by the court at most would have established *specific* personal jurisdiction in *federal* court in the Eastern District of Michigan – not general jurisdiction in the State of Michigan. (Supp. Ciardullo Dec., Ex. 5.)

In the patent case *Krausz Indus. v. Smith-Blair, Inc.*, 188 F. Supp. 3d 545, 558 (E.D.N.C. 2016), the court negated Rule 4(k)(2) upon a showing by a Shanghai-based defendant (Sensus Shanghai) that it was subject to *specific* personal jurisdiction in *federal* court in the Western District of Arkansas because of the defendant's shipment of accused infringing parts into that District. No showing (or even inquiry) was made concerning general personal jurisdiction in the State of Arkansas, and any such inquiry would have shown there was no such general jurisdiction under the facts alleged.

In *Falcon Enters. v. Centurion Ltd.*, No. C07-0065RSL, 2007 U.S. Dist. LEXIS 80031, at *8 (W.D. Wash. Oct. 18, 2007) – a copyright case for which there was exclusive federal jurisdiction – the court negated Rule 4(k)(2) by observing that the defendant could have been subjected to *specific* personal jurisdiction in other States' *federal* courts on account of having committed alleged acts of copyright infringement in those States. No showing or inquiry was made concerning general personal jurisdiction.

Ultimately, there is no rationale for Fitbit's narrow reading of Rule 4(k)(2), and Fitbit does not

8

PHILIPS REPLY ON MOTION TO DISMISS AND TRANSFER
CASE NO. 20-CV-02246-RS
4813-5247-4305.1

even try to offer one. Fitbit's talismanic reliance on dicta and arbitrarily invented bright-line rules fails to speak to reality, or to address the very reason why Rule 4(k)(2) exists in the first place, which was simply as a backstop to ensure a foreign defendant could be sued *somewhere*, such that Rule 4(k)(2) is fully negated when the defendant affirmatively identifies where it can be properly sued. Fitbit's gamesmanship turns Rule 4(k)(2) on its head: Fitbit could have readily had personal jurisdiction over Royal Philips in the District of Massachusetts from the start (as it would have known if it just asked), but instead is trying to improperly leverage Rule 4(k)(2) to drag a foreign defendant into an inappropriate forum.

### 3. Rule 4(k)(2)(B) Is Not Satisfied: Fair Play And Substantial Justice Are Lacking Such That The Court May Decline To Exercise Jurisdiction

Fitbit argues that Royal Philips has conceded that Rule 4(k)(2)(B) – "exercising jurisdiction is consistent with the United States Constitution and laws" – is satisfied. This is incorrect. In fact, Royal Philips devoted much of its Motion (Sections II.D, III.B.2, III.C) to explaining why the exercise of personal jurisdiction in the present court would not comport with "fair play and substantial justice" under the law. *See also, e.g., Universal Music MGB NA, Ltd. Liab. Co. v. Quantum Music Works, Inc.*, 769 F. App'x 445, 446 (9th Cir. 2019) (court may decline jurisdiction under Rule 4(k)(2) where its exercise would be unreasonable or unjust). Specifically, Royal Philips argued that Fitbit's gamesmanship in bringing the present lawsuit where and when it did (including its deliberate failure to confer with Royal Philips about forum), combined with all of the sensible reasons why this action should have been brought (if at all) in the District of Massachusetts, make the exercise of jurisdiction under Rule 4(k)(2) violative of due process principles. (*Id.*, in particular p. 15-16.)

Fitbit tries to recast the history of the case to avoid the obvious conclusion that it was filed where and when it was to achieve tactical goals unrelated to the merits. Fitbit insists that it has a right to seek a declaration that it does not infringe the Patents-in-Suit, but this is a straw man argument: Royal Philips has already acknowledged that federal long arm jurisdiction can apply to support a declaratory judgment suit in view of Royal Philips's initiation of the ITC Action. (Motion, p. 14, n.5.) Rather, Royal Philips's Motion argued that (1) there is no pressing need to proceed with the declaratory judgment action at this time in view of the pendency of the ITC Action (hence Royal Philips's request in the alternative for a stay), (2) that if a district court action were to proceed, jurisdiction and venue for it should be in the District

of Massachusetts, and (3) that the objective circumstances surrounding the filing of the present action demonstrate that it was intended to achieve tactical ends unrelated to the merits.

The objective facts revealing Fitbit's gamesmanship include (1) Fitbit's delay in bringing the present suit, (2) its deliberate failure to consult Royal Philips – which it was otherwise already in regular communication with – about jurisdiction so that Fitbit could forum shop and achieve surprise,[4] (3) Fitbit's timing of the suit with its filing of a parallel patent infringement complaint in the Northern District of California that could have been brought a long time ago if Fitbit actually cared about its merits, and (4) the timing of both of those complaints to occur just as litigation was intensifying in other forums. (Motion, Section II.D.)  Fitbit's Opposition notably declines to grapple with the foregoing facts, pretending almost as if Royal Philips had never raised them.  No matter how Fitbit may try to dress it up, it is clear that the primary driving goal of filing the present case was to unnecessarily multiply litigation between the parties to try to gain tactical leverage, while also forum shopping for a perceived more favorable jurisdiction in the absence of anything that would otherwise tie Royal Philips to California.

The Court is hardly bound to go along with this.  Indeed, not only is the Court's exercise of declaratory judgment in this case purely discretionary in the first instance,[5] but so too is its application of Rule 4(k)(2). For example, the court in *Falcon*, 2007 U.S. Dist. LEXIS 80031 at *8, found that the plaintiff had engaged in gamesmanship, and declined to apply Rule 4(k)(2):

> The Court interprets the 'is entitled to' language [in *Holland Am. Line, Inc. v. Wartsila N. Am., Inc*., 485 F.3d 450, 461-62 (9th Cir. 2007)] to mean what it says, namely that the Court has the Option to presume that nationwide service is appropriate if defendant refuses to identify an alternative forum but that it is not required to do so. Given the facts of this case, the Court declines to impose jurisdiction under Rule 4(k)(2). It is apparent from the papers filed by the parties that there are, in fact, states in which Centurion is subject to the personal jurisdiction of the courts. …Rather than perform the pre-filing investigation necessary to generate adequate jurisdictional allegations, plaintiffs filed suit in Washington

---

[4] Fitbit predictably responds that Royal Philips did not confer with Fitbit before commencing the ITC Action. (Opp., p. 15.)  But the parties and circumstances are not on equal footing.  Royal Philips is a foreign company with no relevant connections to any U.S. State, and it chose to avoid federal district court and pursue an action in the ITC.  The ITC has only one location such that "choice of forum" was never an issue in filing there.  Besides Fitbit was made aware before the filing of the ITC case that Philips intended seek such relief.

[5] *See, e.g., Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) ("We have repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.") (citations omitted).

based on unfounded assumptions, tried to manufacture jurisdictional contacts in the state, and now seek to use Rule 4(k)(2) to wring a jurisdictional waiver from Centurion. The Court is not inclined to reward plaintiffs for such practices and declines to remedy the shortcomings of its jurisdictional showing by using Rule 4(k)(2).

Thus, setting aside all else, if the Court agrees that exercising personal jurisdiction would be unreasonable or unjust under the facts of this case, it may decline to invoke Rule 4(k)(2). Indeed, if Rule 4(k)(2) is to have any kind of due process limits to avoid it being leveraged by a plaintiff for gamesmanship, this should be the case where those limits come into play.[6]

## II.   IN THE ALTERNATIVE, TRANSFER UNDER § 1404(a) IS WARRANTED

### A.   Fitbit Ignores That This Is A Declaratory Judgment Action

Fitbit's arguments implicitly treat this case as if it were an affirmative infringement action. It is not. Rather, because this is a declaratory judgment lawsuit, the geographic locus of the suit is assessed with reference to where Royal Philips has engaged in enforcement activity with respect to the Patents-in-Suit – not where, as Fitbit argues (Opp., p. 12), "development of all of the Fitbit products at issue was spearheaded." (Motion, p. 8-9.) To illustrate, if Royal Philips had engaged in relevant enforcement activity in Utah, personal jurisdiction for purposes of a declaratory judgment lawsuit would have existed in Utah – not California. (*Id*.) Fitbit cites to *Synopsys Inc. v. Mentor Graphics Corp.*, No. C 12-5025 MMC, 2013 U.S. Dist. LEXIS 48544, at *16 (N.D. Cal. Apr. 3, 2013) for the proposition that "the center of the accused activity is the district in which the defendant is alleged to have developed, tested, researched, produced, marketed, and made sales decisions concerning the accused product." But this is an incomplete quote taken from another case, *Kannar v. Alticor, Inc.*, No. C-08-5505 MMC, 2009 U.S. Dist. LEXIS 35091, at *13 (N.D. Cal. Apr. 9, 2009), which includes the critical modifying language "…in actions alleging a claim of patent infringement." The present case is not an "action[] alleging a claim of patent infringement," so Fitbit's logic does not apply.

The reality is that, aside from ITC, there is no forum where Royal Philips has engaged in any enforcement activity with respect to the Patents-in-Suit as would be relevant to a declaratory judgment

---

[6] Fitbit oddly protests transferring this case to Massachusetts if the Court were to find personal jurisdiction lacking. (Opp., p. 11.) One would assume Fitbit would prefer that outcome over re-filing a new case. Royal Philips supplied law on this issue (Motion, p. 12.), but of course defers to the Court.

cause of action. (Dkt. 18-1, ¶ 9.) That is why Royal Philips stated in its Motion that there is no greater connection to California for the declaratory judgment claims than there is to Massachusetts.

Furthermore, it is widely accepted that, as a general matter, a declaratory judgment plaintiff's choice of forum is not entitled to much weight, especially because it often amounts to forum shopping. *See, e.g., Wowwee Grp. Ltd. v. Wallace*, No. CV-12-2298-MWF(VBKx), 2012 U.S. Dist. LEXIS 199343, at *8-9 (C.D. Cal. June 27, 2012) ("a plaintiff's choice of forum should carry less weight in a declaratory judgment action where it is often attempting to preempt what it perceives as a threat of suit. In such situations, a plaintiff's posture before the court is more akin to a defendant than an ordinary plaintiff seeking relief.") (citing *Emerging Vision, Inc. v. For Eyes Optical Co.*, 2009 U.S. Dist. LEXIS 26493, 2009 WL 702243, at *4 (S.D.N.Y. Mar. 16, 2009)). Here, Fitbit's purported reason for filing this action is to preempt an expected lawsuit by Royal Philips in the event that Fitbit prevails in the ITC Action several months from now. (Opp., p. 3.) Assuming that scenario even happens, Fitbit clearly expects that Royal Philips would bring suit in the District of Massachusetts, and is trying to preempt that suit and force it to proceed in California instead, implicating the concerns of *Wowwee* and like cases.

### B.     Fitbit Incorrectly Downplays The Strong Ties To Massachusetts

While playing up the fact that it anticipates using witnesses and documents located in California, Fitbit dismisses the strong ties to Massachusetts that were identified in the Motion, particularly the presence of Royal Philips's subsidiaries there that practice the Patents-in-Suit. (Motion, p. 4-5.) The relevance of the Philips subsidiaries to venue was explained in the Motion: it is these companies that would have technical specialists and documents concerning the relevant patented technology and the benefits thereof. With respect to the local interest factor, it is these subsidiaries – and the hundreds of people that they employ – that stand to be most directly impacted by the question of whether a competitor infringes a technology that they practice.

With respect to the convenience of witnesses and location of evidence, the Court can draw its own conclusions about how much these ultimately matter in the era of video depositions and electronic document production. (For example, the depositions in the ITC Case have all been conducted by remote videoconferencing.) Royal Philips showed why Massachusetts is highly convenient, particularly in view of the fact that Royal Philips is located in The Netherlands, and that there are so many ties to

Massachusetts. Even if the Court credited Fitbit's convenience arguments in spite of its ties to Boston and having an office there, at best they might render the convenience factors neutral.

### C. Because Of The Unique Facts Of This Case, The Interests Of Justice Weigh Strongly In Favor Of Transfer

As discussed above in Section I.B.3, and in the Motion (Section II.D), it is clear that Fitbit's filing of the present lawsuit was an act of gamesmanship, and that Fitbit's purported sense of urgency in litigating this case – which is effectively duplicative of the ITC Action already in progress, and which Fitbit delayed many months before filing – is feigned. Furthermore, even if the Court were to find jurisdiction under Rule 4(k)(2), such jurisdiction truly would be very attenuated in this case. As discussed by the court in *Orbital Austl. PTY Ltd. v. Daimler AG*, No. 3:14CV808, 2015 U.S. Dist. LEXIS 86631, at *9-*11 (E.D. Va. July 1, 2015), Section 1404(a) can serve as an important check against the otherwise unfettered ability of plaintiffs to employ Rule 4(k)(2) to engage in gamesmanship. Because of the special role that Section 1404(a) plays in cases involving Rule 4(k)(2) jurisdiction, all the more weight should be given by the Court to interests of justice in deciding a foreign defendant's motion to transfer. Indeed, as observed in Royal Philips's Motion, the interests of justice is intended as a "catch all" that can sometimes be determinative of the entire analysis. (Motion, p. 17, citing law.)

Here, not only do the objective facts indicate that Fitbit filed the present case for improper purposes, but any personal jurisdiction under Rule 4(k)(2) (if it were to be found by the Court) would be highly attenuated for all the reasons discussed in the Motion and in Section I, *supra*. Thus, under the unique facts of this case, the interests of justice should tip the scales heavily in favor of transfer.

## III. IN THE ALTERNATIVE, A STAY PENDING THE ITC CASE IS WARRANTED

### A. Fitbit's Vague Professed Harm Is No Different Than The Kind Deemed Insufficient To Preclude A Stay In The Precedent Cited By The Motion

As to the first *Landis* factor (harm from a stay), Fitbit contends that it urgently needs to litigate this declaratory judgment suit – which concerns legal arguments that are identical to those already pending in the ITC Action set for trial in October 2020, and which relates to Patent Office IPRs that Fitbit itself initiated – because it wants to remove the "cloud" purportedly created by concerns that if Fitbit hypothetically were to prevail in the ITC Action a few months from now, then Royal Philips would,

13

hypothetically, sue it again in district court. (Opp., p. 16-17.) As a threshold matter, it is useful to actually play out that hypothetical timeline: even it were to happen, it would result in district court litigation commencing in early 2021 following the ITC's ruling, which is less than a year away. (Dkt. 18-2, ¶ 3.) And of course, some other scenario might transpire. Apart from vaguely alluding to a "cloud" over itself, Fitbit fails to articulate what harm would come to it that warrants rushing to preempt a hypothetical future timeline that, even if it happened, would bring the parties right to where Fitbit purports to want them to be (in district court) in less than a year.

Fitbit's Opposition notably ignores the fact that the kind of vague harm it professes to suffer was deemed insufficient to preclude a stay in the cases that Royal Philips cited in the Motion, including a case in which the court rejected the very same arguments made by Fitbit in that case, and granted a stay pending the outcome of a parallel ITC proceeding in which Fitbit was the respondent:

> In addition, although Fitbit generally contends that a delay would be harmful, it fails to adequately articulate that harm. At the hearing, Fitbit stated it was motivated by the 'harm that comes from having the cloud of a federal court lawsuit' and the desire 'to dispel that cloud at the earliest possible opportunity.' Dkt. No. 66 at 10. Courts, however, are generally unwilling to presume delay is harmful without specific supporting evidence.

*Aliphcom v. Fitbit, Inc.*, 154 F. Supp. 3d 933, 938 (N.D. Cal. 2015); *see also Google Inc. v. Creative Labs, Inc.*, No. 16-cv-02628-JST, 2016 U.S. Dist. LEXIS 163696, at *5 (N.D. Cal. Nov. 28, 2016) (the "litigation cloud" argument against granting a stay is unpersuasive coming from a patent declaratory judgment plaintiff) (relying on *Aliphcom*).

Fitbit argues that only it, as the respondent in the ITC Action, should be able to seek a stay of a parallel district court case (Opp., p. 16-17), but this proposition was squarely refused by the cases cited in the Motion (p. 21), which Fitbit tellingly fails to dispute or even acknowledge.

### B. The Circumstances Of This Case Make Proceeding Particularly Unfair

As to the second *Landis* factor (harm from proceeding), Royal Philips submits that the degree of confusion and work created by litigating the present declaratory judgment claims alongside an ITC action that is already set for hearing in October – and possibly also parallel IPRs that were filed by Fitbit – constitutes a unique set of factors rising beyond just the "hardship related to defending a lawsuit" (Opp., p. 17). Indeed, Fitbit itself would be harmed from the extra confusion and expense, though obviously is

14

willing to injure itself in an attempt to also injure Royal Philips. Furthermore, Royal Philips has demonstrated why this particular lawsuit was filed for improper purposes, and is hence inherently unfair to Royal Philips. Fitbit argues that Royal Philips should be fine with engaging in extra litigation given that Royal Philips already commenced litigation against Fitbit previously, but the existence of other pending litigation does not justify proceeding with a new one for the wrong reasons.

### C. A Stay Is Clearly The Appropriate Outcome Absent Dismissal

As to the third *Landis* factor (orderly course of justice), it is clear that a stay will avoid the significant confusion and risk of inconsistent judgments that would otherwise ensue by litigating this case in parallel with the ITC, all for the sake of preempting a hypothetical follow-on district court litigation that would proceed in a just a few months anyway.

The recent and well-reasoned *Aliphcom* and *Google* decisions are directly on point to the present facts, and both granted stays pending the resolution of a parallel ITC proceeding. Fitbit has no real basis to distinguish *Aliphcom,* which was decided against Fitbit on essentially the same facts. With respect to the *Google* case, Fitbit tries to make something out of the fact that the parallel ITC proceeding in that case was up on appeal to the Federal Circuit, but the *Google* court hardly said that it would not have granted the stay otherwise, and in fact expressly noted that guidance from both the Federal Circuit and the ITC itself weigh in favor of granting a stay. *Google*, 2016 U.S. Dist. LEXIS 163696, at *8 ("Clearly, Congress thought that district courts would benefit from the guidance of the ITC and Federal Circuit, even if those decisions are only persuasive.").

Finally, as Fitbit forgets to acknowledge, it is possible that Fitbit's own IPRs challenging the validity of the Patents-in-Suit in the Patent Office may be instituted in the near future, such that a stay of this action pending resolution of those IPRs would also be appropriate. If Fitbit truly believes those IPRs actually have merit, proceeding with the present suit in the meantime would be a significant waste of time.

### IV. CONCLUSION

In view of the foregoing, Royal Philips respectfully requests that the Court dismiss this action and transfer it to the District of Massachusetts. In the alternative, Royal Philips respectfully requests that this action be stayed pending the resolution of the ITC Action.

| | | |
|---|---|---|
| 1 | Dated: July 6, 2020 | Respectfully Submitted, |
| 2 | | <u>*/s/ Jean-Paul Ciardullo*</u> |
| 3 | | Jean Paul Ciardullo, CA Bar No. 284170<br>FOLEY & LARDNER LLP |
| 4 | | 555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071-2411 |
| 5 | | Phone: (213) 972-4500<br>Fax: (213) 486-0065 |
| 6 | | jciardullo@foley.com |
| 7 | | *Counsel for Defendant*<br>*Koninklijke Philips N.V.* |