# EXHIBIT 4

1 | ALAN L. ISAACMAN (State Bar No. 42273)
Isaacman@ikplaw.com
2 | ISAACMAN, KAUFMAN & PAINTER
3 | A Professional Corporation
10250 Constellation Boulevard, Suite 2900
4 | Los Angeles, California 90067
Telephone: (310) 881-6800
5
6 | STEVEN G. STORCH (*admitted pro hac vice*)
sstorch@samlegal.com
7 | MAXIMILLIAN S. SHIFRIN (*admitted pro hac vice*)
mshifrin@samlegal.com
8 | STORCH AMINI & MUNVES PC
9 | 2 Grand Central Tower
140 East 45th Street, 25th Floor
10 | New York, New York 10017
Telephone: (212) 490-4100
11
12 | *Attorneys for Defendant Wuzla.*

13
14 **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

15 | GOES INTERNATIONAL AB, | **CASE NO. 2:13-CV-7102-PA-(Ex)**
a corporation,
16
17 | Plaintiff,
v.
18 | | **DEFENDANT WUZLA'S REPLY**
**BRIEF IN FURTHER SUPPORT OF**
19 | WUZLA, a corporation, aka XTouch, aka | **ITS MOTION TO DISMISS FOR LACK**
Poke Software Technology, aka | **OF PERSONAL JURISDICTION AND**
20 | RUNNERGAMES, | **IMPROPER VENUE**

21 | Defendant.

22 | WUZLA, a corporation, aka XTouch, aka
Poke Software Technology, aka
23 | RUNNERGAMES,

24
25 | Counter-Claimant,

26 | v.

27 | GOES INTERNATIONAL AB,

28
Counter-Defendant.

## I. INTRODUCTION

Plaintiff is in a bind. Seemingly aware that personal jurisdiction over Wuzla is lacking under the controlling doctrinal framework, Plaintiff has apparently chosen to ignore that doctrine entirely and pretend it does not exist. That doctrine, of course, is the "purposeful direction" analysis and the accompanying "effects test" that this Circuit has long held applicable to intentional tort claims in general, and, as pertinent here, to copyright infringement claims in particular. Plaintiff avoids so much as mentioning the phrase "effects test," despite the fact that it relies on cases that expressly apply it, and despite the fact that Wuzla's opening memorandum openly argued it.

As a substitute, Plaintiff offers a theory that is unsupported in the case law. There are over one million applications available on each of the Google and Apple markets, and the developers of every single one of them presumably entered into agreements with Google and Apple, just as Wuzla admittedly did here. Plaintiff's entire theory of jurisdiction in this case is premised solely upon these two agreements with those well-known California entities—a fact that distinguishes Wuzla from none of its countless competitors in both markets. Indeed, Plaintiff offers nothing beyond these two agreements as evidence of Wuzla's express targeting of California through its purportedly infringing activity. But under the applicable jurisdictional inquiry, the fact that these massive, online intermediaries that constitute the worldwide application marketplace are California entities is not even a relevant factor, as their California residence has no bearing on whether any applications find their way to California users—and that is the critical inquiry. Plaintiff, therefore, is left with no facts suggesting that Wuzla targeted California in any way whatsoever, which makes this case no different than those involving the "passive" websites that courts routinely hold should not be subject to jurisdiction without any specific targeting of the forum.

WUZLA'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS
CASE NO.2:13-CV-7102-PA-(EX)
2

Plaintiff's attempt, contrary to countervailing precedent, to hinge jurisdiction on Google and Apple's California connections is actually quite understandable. As a Swedish entity without any alleged California presence whatsoever, Plaintiff cannot establish—under the proper analytical framework it completely disregards—that Wuzla expressly aimed its purportedly tortious conduct at, or that Plaintiff suffered any harm in, California. And under relevant case law, this alone warrants dismissal of the Complaint.

Despite its efforts, however, Plaintiff has not offered a single case—nor alleged a single fact—that actually supports the exercise of jurisdiction over Wuzla, and instead offers a novel, unsupported theory for this Court to apply to a new, burgeoning technology and global industry that exposes the countless application developers throughout the world to personal jurisdiction in California—simply because they made the choice to distribute their product through the California entities that have virtual monopolies over the application marketplace. The Court should decline this offer and instead dismiss the Complaint in its entirety.

## II. ARGUMENT[1]

### A. The Purposeful Direction Framework and the Corresponding "Effects Test" Governs Plaintiff's Claim for Copyright Infringement

Sidestepping the correct standard governing the inquiry,[2] Plaintiff argues that Wuzla "purposefully availed itself of California" by contracting with Google

---

[1] With respect to any argument left unaddressed in this memorandum, particularly the issues regarding venue and Wuzla's motion to transfer, Plaintiff respectfully refers the Court to its opening papers.

[2] Plaintiff correctly does not argue that this Court may exercise general jurisdiction over Wuzla, and only relies on specific jurisdiction analysis. Although Plaintiff briefly and generally mentions jurisdiction under Fed. R. Civ. P. 4(k)(2) in the "Standard of Review" section of its memorandum, Plaintiff makes no substantive argument with respect to the exercise of jurisdiction under that Rule either. Even if it did, that argument would be meritless. In order to invoke Rule 4(k)(2), "the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction." *Holland America Line v.*

and Apple, both of which are California entities. P. Mem. at 3-4. But Plaintiff's sole claim in this action is for copyright infringement, and "[p]urposeful *direction* is the proper analytical framework for determining personal jurisdiction in a copyright infringement case." *Zerebko v. Reutskyy*, No. C 13-00843 JSW, 2013 WL 4407485, *3 (N.D. Cal. Aug. 12, 2013) (recognizing distinct analyses of "purposeful availment" and "purposeful direction") (emphasis added); *see also Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011); *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir.2006). Plaintiff cites no authority that supports departing from this "proper analytical framework," and instead relies upon cases that outwardly apply it. The Court should therefore apply it here.

Part and parcel of any purposeful direction analysis is the "effects test," which is used to determine whether a defendant purposefully directed its tortious activities to the forum state. *See, e.g., Mavrix Photo*, 647 F.3d at 1228. Under that test, a defendant purposefully directs its activities at the forum only if it (1) commits an intentional act (2) that is expressly aimed at the forum state and (3) causes harm that the defendant knows is likely to be suffered in the forum state. *Id.*; P. Mem. at 12-15. Curiously, despite heavily relying on cases that conspicuously apply the "effects test," and despite Wuzla's equally conspicuous application of the test in its opening brief (*See* P. Mem. at 12-15), Plaintiff avoids mentioning it—indeed, the phrase "effects test" is nowhere to be found in its memorandum, nor is any analysis as to whether this Court may exercise personal jurisdiction over Wuzla in accordance with it. Given the clarity of the precedent, this is presumably because Plaintiff is well-aware that the purposeful

---

*Wartsila North America*, 285 F.3d 450, 461 (9th Cir. 2007). "A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there. . . ." *Id*. Defendant consented to personal jurisdiction in New York in its Motion to Dismiss the Complaint, and therefore Fed. R. Civ. P. 4(k)(2) is not applicable. D. Mem. at 20-21.

direction/"effects test" framework precludes the exercise of personal jurisdiction over Wuzla, and therefore seeks to steer the Court's analysis away from its mandated application. This Court should refuse, however, and apply the purposeful direction framework and accompanying "effects test" consistent with straightforward Ninth Circuit case law.

### B. <u>Wuzla Did Not Purposefully Direct its Activities at California Because Plaintiff Is Not A Resident Of, Nor Has Any Significant Presence in, California</u>

Plaintiff is admittedly a resident of Sweden without any presence in California and thus cannot be the object of any express aiming, or suffer any harm in, California. "[I]f the victim is not a resident of California, even an intentional misuse of intellectual property is not 'expressly aimed' at California." *Zherebko*, No. C 13-00843 JSW, 2013 WL 4407485 at *3; *see also Love v. Associated Newspapers*, 611 F.3d 601, 609 n.4 (9th Cir. 2010) (recognizing same); *c.f. Nissan Motor Co., Ltd. V. Nissan Computer Corp.*, 89 F.Supp.2d 1160 (C.D. Cal. 2000) (harm was suffered in California because Plaintiff was California resident).

The facts here mirror those in the recent case of *Zherebko*. There, as here, the plaintiff sued the defendants for copyright infringement for allegedly reproducing, adapting, and distributing copyrighted material in connection with mobile applications that were registered with both Google and Apple. No. C 13-00843 JSW, 2013 WL 4407485 at *1. In support of personal jurisdiction, the Plaintiff alleged, as Plaintiff also does here, that by registering the application with Apple, the defendants consented to both venue and jurisdiction in California. *Id.* The court, however, disagreed, holding that, even if the defendants intentionally misused the Plaintiff's intellectual property, "this intentional act [was] not 'expressly aimed' at anyone in California." *Id.* at *3. Elaborating on the Plaintiff's lack of presence within the state, the court noted that Plaintiff "[did] not allege any ownership interest in any business in California," "that he own[ed] or

lease[d] any property in California, or that he ha[d] a bank account or telephone listing in California." *Id.* at *3. For this reason alone, the Court refused to exercise personal jurisdiction over the defendants on the copyright claims. *Id.*

In this case, the facts are virtually identical. The same allegations that were absent in *Zherebko* with respect to Plaintiff's presence in California are equally absent here. The sole, relevant allegation in the Complaint concerning Plaintiff's location is that "[it] is now, and [at] all times mentioned in [the] [C]omplaint was, a resident of Sweden." Compl. ¶ 2. But this is insufficient to support any assertion that Plaintiff "expressly aimed" at California and instead suggests that Wuzla "expressly aimed" at, and thought that harm would likely be suffered in, Sweden. *See, e.g., Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 678 (9th Cir. 2012) (explaining that impact of an intentional violation of a corporation's copyright will be felt where the corporation is located). Moreover, Plaintiff has submitted a declaration by its CTO in support of its opposition to Wuzla's Motion to Dismiss, yet nothing in that declaration speaks to Plaintiff's presence in California. *See* Declaration of Marcus Johansson ("Johansson Decl."). Plaintiff's failure to plead California presence alone warrants dismissal of the Complaint.[3]

### C. **Plaintiff's Cases Are Inapposite and Actually Demonstrate What Facts Are Necessary to Satisfy the Express Aiming and Harm Requirements**

Rather than apply facts to the appropriate doctrine, Plaintiff draws superficial and general comparisons to *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011) and *Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 89 F.Supp.2d 1154 (C.D. Cal. 2000). Neither case supports an exercise of jurisdiction here, and both cases, in fact, demonstrate precisely the facts that are needed to justify it. As a preliminary matter, the plaintiffs in both cases were

---

[3] Importantly, the plaintiff's consent to jurisdiction with respect to its contractual relationships with Google and Apple correctly did not factor in the Court's decision, even though the Plaintiff himself was a purported party to those contracts.

either formal residents, or had a significant presence in, California. *Nissan Motor Co.*, 89 F.Supp.2d 1160 (noting that harm suffered in California because Plaintiff was based there); *Mavrix Photo*, 647 F.3d at 1222 ("[Plaintiff] keeps a Los Angeles office, employs Los Angeles-based photographers, has a registered agent for service of process in California, and pays fees to the California Franchise Tax Board."). This alone makes these cases inapposite. *See* Section B. *supra*.

That aside, however, both cases also involved defendants that owned and operated websites that were used to specifically target, and injure the plaintiff in, California. First, in *Mavrix Photo*, the defendant operated a "very popular," highly interactive website—celbrity-gossip.net—"with a specific focus on the California-centered celebrity and entertainment industries," and used that website to post celebrity photographs that the plaintiff alleged infringed its copyright. 647 F.3d at 1222, 1230. It was, in significant part, the inherently California-related subject-matter coupled with the size of the California market that led the Court to conclude that the defendant "anticipated, desired, and achieved a substantial California viewer base." *Id.* at 1230 (noting also that the economic value of the website "turn[ed], in significant measure, on its appeal to Californians"). No such California subject-matter or appeal exists here. Wuzla is a Chinese entity, and there is nothing alleged in the Complaint suggesting that its simple Bubble Shoot application appeals to anything more specific than a global gaming audience, irrespective of national boundaries, much less American state boundaries.

Critically, in explaining its application of the well-known decision of *Keeton v. Hustler* Magazine, Inc., 465 U.S. 770 (1984), the court emphasized that both Hustler magazine and celebrity-gossip.net "were large publications that sought and attracted nationwide audiences," and could therefore "count on reaching consumers in all fifty states." *Id.* On these facts, according to the Court, "neither could characterize the consumption of its products in any state as 'random,' 'fortuitous,' or 'attenuated.'" *Id.* Yet the Court expressly noted that the same

rationale would not necessarily apply to a defendant—similar to Wuzla here—"who posted an allegedly actionable . . . photo to a website accessible in all fifty states, but who could not be as certain as [the defendant] or Hustler that his actions would be so widely observed . . . ." *Id.* at 1231. Seemingly foreseeing cases involving facts identical to those present in this case, the Court explained that "[n]ot all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed. But where, as [in *Mavrix Photo*], a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state." *Id.* (acknowledging burden the Court's ruling may place on certain "popular commercial websites").

In stark contrast to celebrity-gossip.net or Hustler Magazine, Wuzla neither was a well-known entity nor independently operated any online or print publication whatsoever—let alone a "very popular" one—at the time that it purportedly developed and released Bubble Shoot, and Plaintiff makes no allegations to the contrary. Wuzla had no targeted appeal at a California audience, no national viewership or scope upon which it could base any certainty that Bubble Shoot would be successful anywhere, much less specifically successful in California, and thus Wuzla could not have known—simply by making a game available in the two largest application markets in the world among countless competitors—that its game "could count on reaching consumers in all fifty states." *Id.* at 1230. Indeed, the consumption of Bubble Shoot in any part of the world would be the very definition of "random, fortuitous, or attenuated" given the saturation and competitive nature of the application marketplace. *Id.*; *See* Shifrin Decl., Ex. B (discussing the "ferociously tough environment even for high-quality apps" and noting that two-thirds of apps may be "zombies that never get downloaded"); *see id.*, Exs. C - D (articles announcing that both Google and Apple markets *each* have over one million applications available for download). As a result, even if

Plaintiff's lack of any presence in California was not dispositive—which it is—Plaintiff has nevertheless failed to meet its burden of showing that Wuzla "expressly aimed" its conduct at California.[4]

### D. Wuzla's Contracts With Google and Apple Cannot Form the Basis of Personal Jurisdiction Under an "Effects Test" Analysis

Plaintiff hangs its hat on the fact that both Google and Apple are California-based intermediaries, and argues that the contracts between Wuzla and those entities are sufficient for jurisdiction to obtain. P. Mem. at 3-4. But these facts do not even factor into the "purposeful direction" analysis. The fact that Google and Apple—the online intermediaries which simply provide the marketplace in which over one million applications compete for downloads—are California entities has no bearing on whether California consumers actually download any of the products. In the context of intentional torts, to which the "effects test" is tailored, the express aiming requirement cannot simply be satisfied by a defendant's collateral contractual arrangement with a forum entity when that entity does not actually further or reflect the defendant's express aiming at that particular forum. Rather, the issue is whether the tortious conduct itself is expressly aimed at forum residents specifically, regardless of whether it was actually achieved *through* a

---

[4] It is worth noting that courts in this Circuit apply a distinct jurisdictional analysis when the asserted basis for jurisdiction stems from the defendant's operation of a website, which requires the use of such a website "in conjunction with something more" in order for personal jurisdiction to obtain. *See, e.g., Mavrix Photo*, 647 F.3d at 1229. Consequently, all contacts analyzed by the court in both *Mavrix Photo* and *Nissan Motor Co.*, beyond the website itself, were part of its "something more" analysis. *Id.* There is certainly an argument that mobile applications should be treated as websites for purposes of personal jurisdiction analysis. *See* Joanna Sibilla Taatjes, Note, Downloading Minimum Contacts: The Propriety of Exercising Personal Jurisdiction Based on Smartphone Apps, 45 Conn. L.Rev. 357, 362 (2012). However, specific application of the "something more" analysis to the present case would not change the result, as the availability of Wuzla's Bubble Shoot application on the Google and Apple markets without any specific targeting of California users is the virtual equivalent of a passive website that similarly fails to target the forum. *See, e.g., Cybersell, Inc. v. Cyversell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997).

1  forum entity. *See, e.g., Old Gringo, LLC v. International Imports, Inc.*, No. 11-cv-
2  1908-IEG (JMA), 2011 WL 6013003 (S.D. Cal. Nov. 30, 2011) (noting "there
3  must be some individual targeting of forum residents" and "mere foreseeability"
4  not enough). Indeed, the cases upon which Plaintiff relies do not factor into their
5  respective "effects test" analyses any of the agreements that existed between the
6  defendants in those cases and the California-based entities. *Compare Mavrix
7  Photo*, 647 F.3d at 1222 (describing several agreements between the defendant and
8  California entities) *with id.* at 1229 (not applying agreements in context of "effects
9  test"); *see also Nissan Motor Co.* 89 F.Supp.2d at 1159-60 (same).[5]

10  Ignoring this, Plaintiff nevertheless claims that the Court in *Mavrix Photo*
11  concluded that jurisdiction was appropriate because "the defendant entered into
12  advertising agreements with California companies." P. Mem. at 4. But this
13  characterization of the court's opinion is wrong. Instead, the Court premised its
14  holding, in part, upon what is both necessary and lacking here: that "[a] substantial
15  number of hits to [the defendant's] website came from California residents" which
16  was discernible because "some of the third-party advertisers on [the website] had

---

[5] Defendant also argues that Wuzla's jurisdictional ties are stronger than the Defendant's in *Nissan Motor* because Wuzla used California entities to generate advertising revenue and distribute its product, whereas the defendant in *Nissan Motor*—which involved a claim for trademark infringement related to a website domain, not a copyright claim related to a distributed product—only used California entities for advertising. P. Mem. at 5. Apart from the obvious differences between the two claims, and as explained above, Plaintiff's entire premise is wrong: the court in *Nissan Co.* did not apply any of the agreements Plaintiff references to its "effects test" analysis. Interestingly enough, the defendant in *Mavrix Photo*—another case Plaintiff cites—actually contracted with California-based firms to design its website, perform site maintenance, and host on its servers a wireless version of celebrity-gossip.net, which, under Plaintiff's theory, one might expect to be a relevant factor. *Compare Mavrix Photo*, 647 F.3d at 1222. But, again, the Court rightly did not consider any of this in its "effects test" analysis of the copyright claim at issue because it had no bearing on whether the infringing activity itself reached California residents. *Id.* at 1229.

advertisements directed to Californians." 647 F.3d at 1230. Plaintiff makes no similar allegations here, nor pleads any similar facts.[6]

Given the legal terrain, the issue in this case is whether Wuzla expressly targeted the California population to consume its purportedly infringing products any more than it did any other place in the world by making its game available on massive, world-wide application markets. By this measure, evidence of advertising expressly directed at California residents by a California entity would presumably be relevant, but no more than it would be if that entity was based in New York. Here, Plaintiff provides evidence of neither, and instead only generally asserts that Wuzla derived "advertising revenue from Google through [its] business relations with Google." P. Mem. at 3-4. Plaintiff makes no allegation—let alone pleads facts supporting one—that any advertising revenue Wuzla received stemmed from California residents, or that any underlying advertisements targeted California residents in any way. This is particularly telling given that Plaintiff is in the exact same business as Wuzla and therefore would know whether distributing games on Google's market involves any express targeting of any specific location.[7]

---

[6] In light of Plaintiff's evidentiary objections to the Declaration of Sophia Yu, Wuzla hereby submits the Declaration of Zheng Gening, filed concurrently with this memorandum. Based on Plaintiff's argument in favor of jurisdiction, however, none of the facts in either declaration are material for purposes of deciding this motion.

[7] While Plaintiff asserts that it has been prejudiced due to Wuzla's purported "failure" to provide "needed" discovery, Wuzla has in fact produced jurisdictional discovery, and was delayed solely for reasons related to its recent substitution as counsel for Wuzla. Moreover, Plaintiff has received large productions from Google and Apple in response to subpoenas, and while Plaintiff does not in any way explain what kind of discovery beyond the large Google and Apple productions would be helpful to its cause, it is Google and Apple, in their roles overseeing their respective application markets, that would actually have any information or documents relevant to the issue of personal jurisdiction. Indeed, Plaintiff's counsel himself believed this. *See* Storch Decl., Ex. A. Plaintiff has had the third-party documents in its possession for at least two weeks prior to filing its opposition papers on March 24, 2014 (*See* P. Mem., Ex. A; Lesowitz Decl., Exs. B-C), and cannot point to any documents showing any express targeting of California other than the agreements themselves. Plaintiff has therefore suffered no

Perhaps most importantly, the Court should consider the precedential consequences of adopting Plaintiff's rationale. If simply contracting with Google and Apple would be sufficient for personal jurisdiction to obtain over non-resident defendants in lawsuits not involving Google or Apple, it would necessarily mean that all entities or individuals distributing applications in the massive Google and Apple markets would potentially be subject to California's jurisdiction simply because they distribute their products through the two largest application markets in the world. This cannot be the appropriate outcome. While this may be acceptable with respect to disputes between an individual application developer and Google or Apple specifically—consistent with a bargained-for, contractual jurisdictional waiver/choice-of-law provision—exposing the entire app-developing world to personal jurisdiction in California courts would be an imprudent place to draw the jurisdictional line given the new and burgeoning application industry. Instead, this Court should apply existing precedent, hold that Wuzla's purportedly tortious conduct did not expressly target California's residents in any way, and therefore grant Wuzla's Motion to Dismiss.

### III. Conclusion

For the foregoing reasons, Wuzla respectfully requests that the Court grant Wuzla's motion to dismiss the complaint in its entirety.

DATED: March 31, 2014

Respectfully submitted,

STORCH AMINI & MUNVES PC

By: /s/ Maximillian S. Shifrin
    Steven G. Storch
    Maximillian S. Shifrin
    Attorneys for Defendant Wuzla

prejudice at all, and there is no further jurisdictional discovery necessary to resolve this motion.